**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

THOMAS C. W.

               Plaintiff,

v.

                                 8:21-cv-01198 (AMN)

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

               Defendant.
_____

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| **LEGAL AID SOCIETY OF** | |
| **NORTHEASTERN NEW YORK** | **WILLIAM R. HOLLAND, ESQ.** |
| P.O. Box 648 | |
| 17 Hodskin Street | |
| Canton, New York 13617 | |
| _Attorneys for Plaintiff_ | |
| **SOCIAL SECURITY ADMINISTRATION** | **HEETANO SHAMSOONDAR, ESQ.** |
| Office of Program Litigation, Office 2 | |
| 6401 Security Boulevard | |
| Baltimore, MD 21235 | |
| **SOCIAL SECURITY ADMINISTRATION** | **PAUL NITZE, ESQ.** |
| J.F.K. Federal Building, Room 625 | |
| 15 New Sudbury Street | |
| Boston, MA 02203 | |
| _Attorneys for Defendant_ | |

**Hon. Anne M. Nardacci, United States District Court Judge:**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I.   INTRODUCTION

Plaintiff commenced this action on November 2, 2021, under 42 U.S.C. §§ 405(g) and 1383(c), challenging the final decision by the Defendant Acting Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") disability benefits under the Social Security Act.  *See* Dkt. No. 1.  Defendant timely filed the Administrative Record, Dkt. No. 12 ("R.").[1]  Plaintiff submitted a memorandum of law arguing that (1) the administrative law judge ("ALJ") erred in evaluating the medical opinions in the record; (2) the ALJ's determination of Plaintiff's credibility was legally erroneous; (3) the ALJ's determination of Plaintiff's residual functional capacity ("RFC") was not supported by substantial evidence; and (4) the ALJ's finding regarding Plaintiff's past relevant work were erroneous.  *See* Dkt. No. 13.  Defendant submitted a brief in opposition.  Dkt. No. 16.

After carefully reviewing the decision of the ALJ and the Administrative Record, and considering the parties' arguments, the Court affirms the decision of the Commissioner.

## II.   BACKGROUND

### A.   Procedural History

On April 2, 2019, Plaintiff Thomas C. W.[2] filed an application for SSI benefits, alleging disability beginning on August 8, 2013, due to conditions including: degenerative disc disease, left hip issues, arthritis, depression, high blood pressure, post-traumatic stress disorder ("PTSD"), anxiety, personality disorder, insomnia, high cholesterol, and alcohol abuse.  R. 59-60, 72-73, 87. Plaintiff's claim was initially denied on September 12, 2019, and upon reconsideration on

---

[1] All citations to the Administrative Record herein will refer to the pagination noted in bold in the bottom-righthand corner of each page, which begins on page 5 of Dkt. No. 12.

[2] In accordance with the local practice of this Court, Plaintiff's last name has been abbreviated to protect his privacy.

January 22, 2020.  R. 92-96, 101-05.  Plaintiff requested an administrative hearing, R. 107-10,

which was conducted on May 26, 2020.  *See* R. 28-58.  The hearing was conducted telephonically,

with Plaintiff's consent, by ALJ Bruce S. Fein, and Plaintiff was represented by counsel.  *See id*.

On May 28, 2020, Plaintiff submitted a post-hearing brief to address hearing testimony

concerning Plaintiff's purported past relevant work.  R. 285.  On June 5, 2020, the ALJ issued a

decision concluding that Plaintiff was not disabled within the meaning of section 1614(a)(3)(A)

of the Social Security Act.  R. 14-27.  Plaintiff requested that the Appeals Council review the

ALJ's decision on June 8, 2020, R. 185-88, and on July 2, 2020, Plaintiff's counsel submitted a

letter-brief in support, R. 286-88.  On September 27, 2021, the Appeals Council denied review of

the ALJ's decision, which action constituted a final decision by the Commissioner.  R. 1-5.

Plaintiff subsequently commenced this action on November 2, 2021.  Dkt. No. 1.

**B.    Plaintiff's Background and Testimony**

Plaintiff was 56 years old at the time he applied for SSI benefits in 2019.  R. 59.  He

finished two years of college in 1995.  R. 213.  Plaintiff testified that in the past 15 years he had

worked in food service, as a delicatessen clerk, and as a small parts assembler.  R. 51, 55-56.  He

testified that while an assembler, he "install[ed] hard drives into DVRs and coolant vans," but

after "a few months" he was having difficulties including making too many mistakes, so he was

reassigned to unbox and re-box products after assembly.  R. 55-56.  Plaintiff testified his last

employment as a kitchen assistant in 2018 was a temporary position, where he worked for "about

three months" after which he felt he could not do the work and the position ended.  R. 46.

Plaintiff testified that he experiences back pain that limits the range of motion in his arms

and his ability to crouch, bend over, hold more than ten pounds in front of him, and stand or sit

for longer than ten minutes at a time.  R. 34, 38-42.  Plaintiff also testified that he gets winded

after short walks and cannot walk more than 10 minutes without a break.  R. 39-40.  Plaintiff testified that he goes grocery shopping with the assistance of a caseworker from his medical team who helps him shop and load and unload grocery items, and that a roommate helps him put away his groceries at home.  R. 35-36.  Further, Plaintiff testified that he generally prepares microwavable food because he has difficulty standing long enough to cook.  R. 42-43.

Plaintiff testified that due to his mental health problems, he gets nervous to the point of having panic attacks, loses focus and the ability to concentrate, and he has great difficulty in unfamiliar places.  R. 34-36.  He testified that he has had thoughts of self-harm in the past, but does not have them anymore, and he has attempted suicide on several occasions, with the last time being around 2010.  R. 36.  Plaintiff testified that he takes several mental health medications and has for years, but does not feel they offer much relief.  *Id*.

### C.   Medical Evidence

The record contains voluminous medical evidence related to Plaintiff's physical and mental health, which the Court summarizes here.

#### 1.   Physical Health

##### a.   Claxton – Hepburn Medical Center (Dr. Nagrare)

On December 15, 2017, Plaintiff underwent x-ray scans of his lumbar spine, hip, and pelvis at Claxton – Hepburn Medical Center ("CHMC") due to a history of pain.  R. 329-30.  The scans showed proper alignment with moderate degenerative changes at all levels in the lumbar spine and mild diffuse osteoarthritic changes in the hips and pelvis.  *Id*.

From August through November 2018, Plaintiff saw Nupur Nagrare, M.D., monthly at CHMC.  R. 586-609.  In August and September, Dr. Nagrare assessed and treated Plaintiff for hypertension, hypertriglyceridemia, lower back pain, wheezing, and tobacco abuse.  R. 594-608.

In October, Plaintiff reported uncontrolled shaking of extremities ("extrapyramidal movement disorder") likely related to long-term antipsychotic use, and Dr. Nagrare prescribed medication. R. 590.   In November, Dr. Nagrare treated Plaintiff for chronic back pain ("lumbago"), extrapyramidal movement disorder, hypertension, tobacco abuse, and insomnia.  R. 586-88.  Dr. Nagrare noted that Plaintiff was advised to try physical therapy for the back pain but declined after noting that his attempts at physical therapy a couple years earlier had been unhelpful.  *Id*.

### b.   Community Health Center of the North Country (NP Gokey)

On January 16, 2019, Plaintiff established care with Nurse Practitioner Donna Gokey, FNP-C, at the Community Health Center of the North Country ("CHCNC"), R. 383, whom he saw several times throughout 2019.  In a depression screening, Plaintiff reported that he had most of the screened symptoms more than half the days or nearly every day, and he had thoughts that he "would be better off dead, or of hurting [himself] in some way" several days but denied thoughts of suicide or self-harm.  R. 383.  The screening results were "moderately severe depression." *Id*.  His past medical history included hypertension, arthritis, bipolar disorder, and PTSD; he had seven admissions at CHMC for psychiatric reasons between 2000 and 2018, one of which was for a suicide attempt.  R. 384-85.  Plaintiff was taking numerous prescriptions for hypertension, arthritis, and mental health problems.  R. 384.  On examination, he had a normal gait, normal range of motion in his spine, and motor strength in his upper and lower extremities bilaterally.  R. 386.  He reported doing his own shopping and playing video games with a friend, and that he did not cook much because it was "[n]o fun cooking for one."  R. 383.

On February 8, 2019, Plaintiff saw NP Gokey again.  R. 377-81.  His depression screening was similar but less severe, with a result of "mild depression" and he reported feeling that his mental health concerns were stable.  R. 377.  He had recently been prescribed a medication to

treat substance abuse, but his other prescriptions remained largely the same.  R. 377-78.  On March 13 and May 21, 2019, Plaintiff was seen by NP Gokey to assess his chronic hypertension. R. 367-76.  NP Gokey noted that Plaintiff had few if any complaints overall.  R. 367-74.  In March, NP Gokey treated Plaintiff for conditions included chronic hypertension, nicotine dependence, generalized anxiety disorder, major depressive disorder (severe), and insomnia, and his prescriptions remained largely the same.  R. 375.  In May, he had new prescriptions for an additional antidepressant, a replacement medication for insomnia, a muscle relaxant for back pain, and a steroidal nasal spray.  R. 367-70.  Plaintiff reported that the new antidepressant had not made a significant improvement in his mood, and he reported feeling down, depressed, or hopeless for several days.  R. 367.

Plaintiff returned to NP Gokey twice in October and once in early November 2019 and reported side effects believed to be from starting a new antipsychotic medication.  R. 442-51, 553-56.  Plaintiff was sent for abdominal imaging and a stool culture for diarrhea, nausea, and vomiting he was experiencing; the results were mostly normal other than low sodium and high cholesterol.  R. 443-45, 562-65.  Plaintiff's nausea and vomiting persisted for more than six weeks but improved after surgery to remove his gallbladder on November 19, 2019.  R. 549, 569-70.

In a Medical Source Statement dated March 25, 2020, NP Gokey diagnosed Plaintiff with arthritis in both knees, chronic back pain, stage III chronic renal disease, low glomerular filtration rate (kidney function), and high cholesterol.  R. 573-78.  NP Gokey concluded that Plaintiff could sit or stand/walk for less than two hours each—closer to 15 minutes each; would need a 5-10 minute walk every 10-15 minutes; would need unscheduled five minutes breaks every 15-30 minutes due to chronic fatigue; and should elevate his legs waist high 50% of an 8-hour workday due to pain/discomfort.  R. 574-75.  NP Gokey found that Plaintiff could only occasionally lift

ten pounds or less, twist, or climb stairs and rarely lift twenty pounds, stoop, or crouch.  *Id*. Plaintiff could only reach his arms in front of his body 50% of the workday and reach overhead about 75% of the workday due to back pain when extending his arms.  R. 576.  Overall, NP Gokey assessed that Plaintiff would be off-task 25% or more of typical workday and miss more than four workdays per month—the maximum categories offered.  *Id*.

### c.   Industrial Medicine Associates (Dr. Lorensen)

On August 27, 2019, Plaintiff had a physical consultative examination with Dr. Elke Lorensen, M.D.  R. 423-29.  Dr. Lorensen issued an opinion in which she diagnosed Plaintiff with arthritis, back pain, bilateral hip (pelvis) and knee pain, and hypertension.  R. 424-25.  Dr. Lorensen concluded that Plaintiff had "[n]o gross limitations sitting, standing, walking, and handling small objects" and "[m]oderate limitations for bending, lifting, reaching, and squatting." R. 425.

### 2.   Mental Health

### a.   CHMC

On May 5, 2017, Plaintiff was admitted to the CHMC emergency department hospital for recurrent major depressive disorder.  R. 331-37.  He reported that two prescriptions for his mental health had recently been increased and, while intoxicated, he had a panic attack, felt anxious, and did not want to become suicidal, so he drove himself to the hospital.  R. 336-37.  He reported alcohol, marijuana, and tobacco use.  R. 337.  On examination on May 6, Plaintiff was positive for anxiety, depression, and alcohol dependence; he was negative for suicidal ideation and all other psychological symptoms.  R. 341.  He was cooperative, calm, had pleasant behavior, and was oriented to person, place, and time, with no thoughts or intent to harm himself or others.  *Id*. He was negative for suicidal ideation ("SI") and harm ideation ("HI") at discharge; he was

encouraged to go to rehab for alcohol abuse.  R. 333, 337, 340.

On or about June 9, 2018, Plaintiff was admitted to CHMC emergency department for suicidal ideation, where he was treated by Javier Y. Vargas, M.D.  R. 291.  He was heavily intoxicated and admitted to self-medicating his depression with alcohol. R. 291, 322. He reported depression, anxiety, and PTSD, and a long history of "suicide gestures," but later denied suicidal ideation.  R. 291-92.  He reported three suicide attempts, with the last occurring in 2010 by overdose.  R. 291, 298.  He said that his PTSD stemmed from abuse he suffered as a child.  R. 321. The hospital recommended inpatient rehab, which Plaintiff declined, and he was discharged on June 13, 2018.  R. 322.

### b.    CHCNC

#### i.    NP Nair

On November 26, 2018, Plaintiff saw Nurse Practitioner Lakshmi Nair, NPP, for a psychological evaluation.  R. 515-19.  Plaintiff reported "anxiety, high stress level, insomnia, irritability, mania, memory loss, mental or physical abuse, mood swings, depression, nightmares, [and] psychiatric hospitalization."  R. 517.  On examination, NP Nair noted that Plaintiff was disheveled, had poor hygiene and sleep, was restless with tremors/psychomotor agitation, had pressured speech, poor insight, constricted affect, perceptual distortions, and that his mood was "moderate, depressed, irritable, anxious," and he had a low frustration tolerance.  *Id.*  NP Nair noted that Plaintiff's thought content was obsessive, paranoid, and hypervigilant, and that his thought process was "learned helplessness, chronic adverse life experiences, stuck in trauma, as evidenced by vivid dreams and nightmares, [and] inability to process trauma." R. 518.  Plaintiff was assessed with bipolar disorder, alcohol abuse, PTSD, marijuana use, insomnia, ADHD, high risk medication use, and "adverse childhood experience and trauma (sexual abuse)." *Id.*  NP Nair

started Plaintiff on an ADHD medication and lithium for bipolar disorder.  *Id.*

On December 27 and 28, 2018, Plaintiff saw NP Nair and reported experiencing severe dizziness, irritability, increased insomnia, and nausea from Lithium, and that he had discontinued it after two weeks, with significant patterns of mania and depression occurring every 3-4 days. R. 507, 511.  He reported memory issues and testing indicated mild cognitive impairment which was "attention concentration related exacerbated by anxiety and mood problems."  *Id*.  Plaintiff complained that his symptoms were not under control and that he wanted to scrap his medications and "start fresh."  R. 511.  On examination, NP Nair noted that Plaintiff had a constricted affect, perceptual distortions, and a depressed, irritable, anxious mood.  R. 513.  She changed Plaintiff's medication for bipolar disorder and decreased his prescription for PTSD to reduce his dizziness. R. 513-14.  NP Nair also stopped Plaintiff's ADHD medication until his anxiety and mood symptoms were better managed, due to his complaints.  R. 514.

Plaintiff had follow-up visits with NP Nair on January 11 and February 1 and 21, 2019. R. 481, 492, 502.  At these visits, Plaintiff reported some improvement in his depression symptoms with medication, *id.*, but as of the February 21 visit, Plaintiff was still struggling with "significant PTSD symptoms" and complained of anxiety, insomnia, irritability, mania, memory loss, mood swings, depression, and nightmares, R. 481-82.  On a visit with NP Nair on February 27, 2019, he reported some relief from depression, and he started another medication to treat his bipolar disorder and insomnia.  R. 477-79.

### ii.    NP Davis

On March 22, April 5, and June 17, 2019, Plaintiff saw Nurse Practitioner Yvonne Lorelle Davis for medication management for anxiety and depression.  R. 457, 465, 468.  He complained that poor sleep was his "biggest issue" and part of why he was "always anxious."  R. 465, 468.

NP Davis adjusted Plaintiff's medications for depression, bipolar disorder, and insomnia because he was worried about "building a tolerance to medications."  R. 466, 468-70.

### c.     St. Lawrence County Mental Health Clinic

Plaintiff initially established care with the St. Lawrence County Mental Health Clinic ("SLCMHC") from February 2016 through January 2017, during which time he was treated for bipolar disorder and alcohol abuse.  R. 399.  Plaintiff struggled with maintaining his appointments, maintaining sobriety, and maintaining a stable mood overall.  *Id*.

### i.     Counselor McGregor

From May through June 2019, Plaintiff saw Licensed Mental Health Counselor Sarah McGregor, CASAC 2, biweekly at the SLCMHC.  R. 392-96.  On June 17, 2019, Plaintiff reported experiencing anxiety, panic attacks, agoraphobia, low-grade paranoia that kept him in his home, eating disorders, insomnia, nightmares, and mental health "episodes" that occur twice a year and last a day.  R. 399-400.  Plaintiff's mood was anxious, he appeared disheveled, and his judgment was mildly impaired.  R. 408-10.  Counselor McGregor diagnosed Plaintiff with Bipolar I Disorder; PTSD; tobacco and cannabis use disorders; avoidant/restrictive food intake disorder with binging tendencies; and cocaine and alcohol use disorders in remission.  R. 412.

On June 27, 2019, Counselor McGregor's assessment remained largely the same.  R. 394. She indicated that Plaintiff's symptoms included mood fluctuations, anxiety, and depression.  *Id*. Suicidal features were not currently present.  R. 395.  Counselor McGregor noted that Plaintiff has "poor hygiene, stays at home, [and does] limited outside activities."  *Id*.  She opined that Plaintiff's "medical conditions inhibit his ability to work as well at fast paced positions which become overwhelming, anxiety provoking, and stressful.  He prefers to be in managerial roles." *Id*.  Counselor McGregor also opined that Plaintiff had limitations including struggles with time

management, remembering appointments, "staying on task," focus, following complicated directions, hygiene, and trusting others.  R. 395-96.  The expected duration of Plaintiff's condition was 12 months.  R. 394.

### ii.    NP Nair

On July 1, 2019, Plaintiff saw NP Nair again, this time at SLCMHC.  R. 530-38.  Plaintiff complained of worsening nightmares, anxiety, and binge eating.  R. 530.  NP Nair summarized that Plaintiff "will continue to work on coping skills, and anxiety management techniques through the course of treatment combined with medication management" and that although he "chronically" experiences suicidal ideation, he has been learning to "distract himself from these thoughts."  R. 535.  NP Nair increased Plaintiff's prescription dosages for depression and hypertension.  R. 536.

### iii.    Dr. Noia

On August 27, 2019, Plaintiff underwent a psychiatric examination by Dennis M. Noia, Ph.D.  R. 431-35.  Plaintiff appeared sad and reported sleeping issues and symptoms of depression and anxiety including dysphoric moods, psychomotor retardation, loss of usual interests, irritability, fatigue and loss of energy, low self-esteem, problems with memory, problems with concentration, diminished sense of pleasure, and flashbacks and nightmares related to childhood and adult physical and sexual abuse.  R. 432.  On examination, Plaintiff had a constricted affect, cooperative demeanor, adequate social skills, appropriate overall appearance, and coherent thought processes.  R. 433.  Plaintiff had intact attention and concentration, average cognitive functioning, good judgment and insight, and mildly impaired memory skills.  *Id*.

Dr. Noia diagnosed Plaintiff with unspecified bipolar and related disorder, PTSD, alcohol and stimulant use disorders (in remission), arthritis, hypertension, and high cholesterol.  R. 434.

Dr. Noia concluded that Plaintiff had mild limitations for understanding, remembering, or applying complex directions and instructions; interacting adequately with supervisors, coworkers, and the public; and sustaining an ordinary routine and regular attendance at work.  *Id*.  Plaintiff had moderate limitations for regulating his emotions, controlling behavior, and maintaining well-being.  *Id*.  Dr. Noia noted that "the expected duration of Plaintiff's impairment … is more than 1 year."  *Id*.

### d.    Assertive Community Treatment (Dr. Thesee)

In November 2019, Plaintiff began receiving care from the United Helpers Assertive Community Treatment ("ACT") Team.  R. 549, 638-42.  On November 8, 2019, Plaintiff saw ACT psychiatrist, Ronald Thesee, M.D.  R. 642.  Dr. Thesee noted Plaintiff had a disheveled appearance, appropriate affect, grossly intact memory, average cognitive functioning, and fair insight and judgment.  *Id*.  Dr. Thesee diagnosed Plaintiff with bipolar disorder, unspecified anxiety disorder, alcohol and cannabis use disorders, and PTSD.  *Id*.  Dr. Thesee recommended that Plaintiff continue his numerous current medications for these conditions with ACT support, including monthly follow-up appointments.  R. 642, 580.

On May 5, 2020, Dr. Thesee completed a medical source statement based on a psychiatric examination of Plaintiff.  R. 580-85.  Dr. Thesee again diagnosed Plaintiff with bipolar disorder, unspecified anxiety disorder, alcohol and cannabis use disorders, and PTSD.  R. 580.  Dr. Thesee opined that even if Plaintiff stopped using alcohol and cannabis, he would still have the same severity of limitations.  R. 581.  Dr. Thesee further found that Plaintiff was "extremely" limited in accepting instructions and responding appropriately to supervisors; dealing with normal and semiskilled/skilled work stress; and maintaining socially appropriate behavior.  R. 584.  Dr. Thesee noted that Plaintiff had "marked" limitations in interacting with others; adapting and

managing himself in the workplace; maintaining attention for a two-hour segment; completing workdays without psychologically based interruptions; performing consistently without unreasonable rest; working with and getting along with others without succumbing to or creating undue distraction; and interacting appropriately with the public.  R. 582, 584.  Finally, Dr. Thesee indicated that Plaintiff's impairment had already lasted or could be expected to last for a minimum of 12 months.  R. 581.

### 3.   Consultative Examinations of the Record

On September 10, 2019, D. Chen, M.D., signed a Disability Determination Explanation concerning Plaintiff.  R. 59-64, 69-71.  Dr. Chen considered the medical evidence from Dr. Noia, Dr. Lorensen, and Counselor McGregor.  R. 61-62.  Dr. Chen noted Plaintiff's normal back and musculoskeletal exam findings from January 2019, normal gait and stance with some limited squatting capacity and ability to stand and sit unassisted in an exam from August 2019, full range of motion (ROM) in his cervical spine, shoulders, elbows, forearms, wrists, and ankles, and with some limitation to his lumbar ROM, hips, and knees.  R. 64.  Notwithstanding the record evidence, Dr. Chen opined that Plaintiff's physical impairments were non-severe and determined that Plaintiff was not disabled.  R. 70.

On September 11, 2019, J. Ochoa, Psy.D., signed a Disability Determination Explanation concerning Plaintiff.  R. 64-69.  Dr. Ochoa considered the medical evidence from Dr. Noia, Dr. Lorensen, and Counselor McGregor.  *Id*.  Dr. Ochoa found that Plaintiff had sustained concentration, persistence, understanding, and memory limitations, and moderate limitations to his ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable

number and length of rest periods.  R. 67-68.  Dr. Ochoa also found that Plaintiff had social interaction limitations, adaptation limitations, and moderate limitations to travel in unfamiliar places or use public transportation.  R. 68-69.  Finally, Dr. Ochoa opined that Plaintiff appeared "capable of understanding and remembering detailed work instructions and procedures," "sustaining adequate attention/concentration to complete work like procedures and sustain a routine," and "adapt[ing] to work related changes."  R. 69.

On January 8, 2022, S. Putcha, M.D., signed a Disability Determination Explanation concerning Plaintiff.  R. 73-78, 84-86.  Dr. Putcha considered the medical evidence from Dr. Noia, Dr. Lorensen, and Counselor McGregor.  *Id*.  Dr. Putcha found that Plaintiff was not limited to unskilled work because of his impairments, that his impairments were not severe, and that he was not disabled.  R. 85.

Finally, On January 15, 2022, L. Hoffman, Ph.D., signed a Disability Determination Explanation concerning Plaintiff.  R. 79-84.  Dr. Hoffman considered the medical evidence from Dr. Noia, Dr. Lorensen, and Counselor McGregor.  R. 80-81.  Dr. Hoffman found that Plaintiff had sustained concentration and persistence limitations, moderate limitations to his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, moderate limitations to his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and social interaction limitations.  R. 82.  Finally, Dr. Hoffman opined that Plaintiff appeared "capable of understanding and remembering detailed work instructions and procedures," "sustaining adequate attention/ concentration to complete work like procedures and sustain a routine," and "adapt[ing] to work related changes."  R. 83-84.

### D.   The ALJ's Decision

On June 5, 2020, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act.  R. 14-27.  The ALJ used the required five-step evaluation process to reach this conclusion.  R. 15-16.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since April 2, 2019, the SSI application date.  R. 16.  At step two, the ALJ determined that Plaintiff had the following "severe" impairments: (1) bipolar disorder; (2) unspecified anxiety disorder; (3) PTSD; (4) bilateral arthritis of the knees; and (5) degenerative disc disease.  R. 16-17 (citing 20 C.F.R. § 416.920(c)).

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."  R. 17-18 (citing 20 C.F.R. §§ 416.920(d), 416.925, and 416.926).  In particular, the ALJ considered sections 1.00 (musculoskeletal system) and 11.00 (neurological), Listings 12.04, 12.06, and 12.15, and the respective "paragraph B" and "paragraphs C" criteria in reaching this determination.  R. 17-19.  The ALJ then assessed Plaintiff's RFC,[3] in light of the "paragraph B" mental functional analysis, the requirements of 20 CFR 416.920c, 416.929, and SSR 16-3p.  R. 18-19.  The ALJ determined that Plaintiff had the RFC to perform the exertional demands of light work, as defined in 20 C.F.R. § 416.967(b), with the following additional limitations:

> [Plaintiff] is able to occasionally balance, kneel, crouch, crawl, or climb stairs or ramps, but should not climb ropes, ladders or scaffolds.  He should work at simple, routine, and repetitive tasks.  He should work in a low stress job defined as occasional decision-making, occasional judgment required on the job, and occasional changes in the work setting.  [He] should have no more than occasional interaction with co-workers, supervisors, and the public.

---

[3] RFC is defined as the "the most [a claimant] can still do despite" his limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

R. 19.

The ALJ found the limitations to be "consistent with and supported by the observations of treating, reviewing, and examining sources in the medical records." R. 21. In particular, the ALJ found the opinion of Dr. Lorensen, to be generally persuasive with regard to Plaintiff's spine, knee, and hip limitations, but not the asserted reaching limitation. *Id*. The ALJ found the opinions from Dr. Putcha and Dr. Chen not persuasive because they were inconsistent with the medical record of Plaintiff's physical limitations. *Id*. The ALJ found the medical source statement from NP Gokey to be not persuasive because it was inconsistent with record evidence and other medical opinions. *Id*. The ALJ found the medical source statement from Dr. Noia to be partially persuasive because his conclusion that Plaintiff could perform simple tasks was supported by the record evidence, but the conclusion Plaintiff had no limitations concentrating or consistently performing a task were not consistent with Plaintiff's anxiety and struggles with sobriety. R. 21-22. The ALJ found the opinions from Dr. Hoffman and Dr. Ochoa persuasive because their explanations cited to record evidence and were generally consistent with the record. R. 22. The ALJ found the opinion from Counselor McGregor to be partially persuasive because of the ambiguous use of "limited" in the conclusions. *Id*. Finally, the ALJ found the opinion from Dr. Thesee to be not persuasive because the workplace interaction assessments were unsupported by the record. *Id*.

At step four, the ALJ found that Plaintiff could perform his past relevant work as an assembler. R. 22. The ALJ found that "this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the

relevant period."[4]  *Id*.  The ALJ cited the vocational expert's testimony that Plaintiff, with the limitations assessed in the RFC, would be able to perform his past relevant work as an assembler as well as work as an assembler as generally defined in the Dictionary of Occupational Titles ("DOT").  R. 22, 53-54.  The ALJ concluded that, considering Plaintiff's work experience and limitations, Plaintiff "is capable of performing past relevant work as an assembler (DOT Code: 706.684-022, svp2, light exertion)," and that "[t]his work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity."  R. 23.  As a result, the ALJ found that Plaintiff was not disabled.  *Id*.

## III.   STANDARD OF REVIEW

"Every individual who is under a disability shall be entitled to a disability ... benefit."  42 U.S.C. § 423(a)(1)(E).  For purposes of qualifying for SSI benefits, a person is disabled when she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Second Circuit follows a sequential five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether a claimant meets the statutory standard:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite

---

[4] Doing so required the ALJ to go back over 14 years, to 2005-06, when Plaintiff had worked as an assembler for a period of months.  R. 22.

the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the [case law], the claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d. Cir. 1982).

In reviewing a final decision by the Commissioner, the Court does not determine *de novo* whether Plaintiff is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Court must review the administrative record to determine whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted).  "Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447-48 (2d Cir. 2012) (*per curiam*) (quoting *Moran*, 569 F.3d at 112) (emphasis omitted).  If supported by substantial evidence, the Commissioner's findings "will be sustained ... even where substantial evidence may [also] support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  However, "[w]ithin that limitation on its scope, appellate review of an administrative record is plenary, and not merely a rubber-stamping of the administrative conclusion." *Williams o/b/o Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

The Court must also determine whether the ALJ applied the correct legal standards. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).  When claiming error, a plaintiff bears the burden of showing how such error caused her to be harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party

attacking [an] agency's determination").  The Second Circuit has not definitively ruled on the required showing to warrant a remand, but some district courts in the Second Circuit have found that the "mere probability" or even the "possibility" of prejudice to a Social Security claimant is enough to warrant a remand to the Commissioner.  *Torres v. Colvin*, No. 3:13-CV-1914, 2015 WL 13729869, at *6 (D. Conn. Dec. 2, 2015), *report and recommendation adopted*, No. 3:13-CV-1914, 2016 WL 1182978 (D. Conn. Mar. 28, 2016); *Koutrakos v. Astrue*, 906 F. Supp. 2d 30, 39 (D. Conn. 2012).  "Where an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ."  *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (quoting *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 n.3 (11th Cir. 1982)).  The Court reviews *de novo* whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles.  *See id.*; *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

## IV.    DISCUSSION

In challenging the decision to deny his application for SSI benefits, Plaintiff argues that: (1) the ALJ erred in evaluating the medical opinions; (2) the ALJ erred in assessing evidentiary credibility; (3) the ALJ's RFC determinations were not supported by substantial evidence; and (4) the ALJ erred in the Step Four finding that Plaintiff could return to past relevant work.  Dkt. No. 13 at 1.  The Court will address each argument in turn.

### A.    Medical Opinions

#### 1.    Dr. Thesee

The ALJ gave Dr. Thesee's opinion no persuasiveness "due to the lack of supporting explanation that cites to evidence in the record."  R. 22.  The ALJ stated that Dr. Thesee failed to

provide support for Plaintiff's "extreme" limitations.  *Id*.  The ALJ also noted evidence that Plaintiff was "cooperative" at appointments, was able to shop, and used volunteer transportation without inappropriate behavior, which the ALJ found to be inconsistent with the asserted expectations for Plaintiff's workplace conduct.  *Id*.

Plaintiff argues that the ALJ's analysis was erroneous because he failed to sufficiently address the limitations found by Dr. Thesee.  Dkt. No. 13 at 11-13.  The Court agrees.  First, although the ALJ briefly discussed the supportability and consistency of the "extreme" limitations found by Dr. Thesee, he made no mention of the "marked" limitations found by Dr. Thesee.  *See* R. 22.  Second, the ALJ failed to meaningfully discuss the consistency of Dr. Thesee's opinion with other medical evidence.[5]  The only evidence cited by the ALJ to contradict Dr. Thesee's opinion was Plaintiff's cooperative demeanor at appointments and the fact that he could do some basic daily activities.  *See id*.  The ALJ did not explain, however, how these activities refuted any of the marked limitations, such as interacting with others and maintaining attention in the workplace.  *See*, *e.g.*, R. 582, 584.  The ALJ further did not consider these asserted limitations in light of other consistent evidence, notably those of Counselor McGregor, who saw the patient several times in 2019 and opined that Plaintiff's medical conditions limit his ability to work in fast paced positions, to do work-related activities due to struggles with time management and keeping appointments, and to stay on task and follow complicated directions.  R. 395.[6]

---

[5] The Regulations state that the ALJ is required to "explain how [he] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The Regulations provide that with respect to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

[6] Although not challenged by Plaintiff, the ALJ found Counselor McGregor's opinion "partially persuasive due to the treatment relationship Ms. McGregor has with the claimant" but found that Counselor McGregor's opinion "does not tell us if the claimant is able to maintain a regular

The Commissioner argues that the ALJ analyzed the consistency of the marked limitations elsewhere in the decision.  Dkt. No. 16 at. 17-19.  But the ALJ's analysis was cursory at best.  For example, with regard to maintaining attention and interacting with others, the ALJ cited a scattering of findings of moderate limitations.  R. 18.  The ALJ brushed aside evidence that, despite different medications and years of attempts at treatment, Plaintiff's mental health conditions have led to recurring problems with anxiety and depression.  R. 20.  The ALJ did not address whether such evidence supported the limitations found by Dr. Thesee.  R. 22.  Nor did the ALJ address the fact that NP Gokey assessed that Plaintiff had a marked limitation for interacting with others, which was consistent with Dr. Thesee's and Counselor McGregor's opinions.  *See* R. 395, 577, 582.  In sum, the ALJ erred in analyzing Dr. Thesee's opinion and substantial evidence did not adequately support his conclusion that Dr. Thesee's opinion was unpersuasive.

### 2.    NP Gokey

The ALJ found NP Gokey's opinion not persuasive "because it is not consistent with the evidence in the record."  R. 21.  The ALJ stated that there was no record evidence to support the limitations regarding a need for Plaintiff to elevate his legs waist high with prolonged sitting.  *Id*.  The ALJ also stated that the limitations for significant workday off-task time and monthly absences were "not consistent with the record or other medical opinions," noting that Plaintiff had not received time-consuming treatments or been hospitalized for his physical ailments.  *Id*.

---

schedule or his ability of understanding."  R. 22.  When read in light of the record as a whole, Counselor McGregor's opinion supports the psychological limitations noted by other practitioners, including Dr. Thesee.  *See Carol D. v. Comm'r of Soc. Sec.*, No. 6:18-CV-1181 (ATB), 2020 WL 772668, at *7 (N.D.N.Y. Feb. 18, 2020) ("Failure to consider or assign specific weight to an opinion may be considered harmless error where consideration would not have changed the outcome.").

Plaintiff argues that the ALJ failed to sufficiently explain his analysis of NP Gokey's opinion, particularly with regard to supportability and consistency.  Dkt. No. 13 at 13-14.  In response, the Commissioner contends that the ALJ properly found NP Gokey's opinion unpersuasive because it was "not supported by her own treatment notes and was inconsistent with other evidence."  Dkt. No. 16 at 6-8.

As with Dr. Thesee, the ALJ's specific analysis of NP Gokey's opinion was very brief.  But earlier in the decision, the ALJ thoroughly discussed Plaintiff's physical conditions and limitations.  Among other things, the ALJ cited evidence that Plaintiff had mild lumbar spine issues in x-rays; mild hip issues in x-rays; normal gait; and normal range of motion.  R. 20.  The ALJ cited NP Gokey's own and others' treatment notes indicating normal findings and few limitations with respect to Plaintiff's gait and spinal range of motion.  *Id.* (citing R. 296, 341, 386, 424-25, 500, 589, 620).  Thus, reading the ALJ's decision as a whole, the Court finds that the ALJ properly evaluated NP Gokey's opinion, and that substantial evidence supported the decision to find it unpersuasive.  *See*, *e.g.*, *Ryan v. Astrue*, 650 F. Supp. 2d 207, 215 (N.D.N.Y. 2009) (finding that "based on the record as a whole, substantial evidence supports the ALJ's decision that the opinion [of treating physicians] is not supported by Plaintiff's treatment history").

### 3.    Dr. Lorensen

The ALJ found Dr. Lorensen's opinion to be "generally persuasive."  R. 21.  The ALJ stated that the moderate limitations assessed for bending, lifting, and squatting were consistent with Plaintiff's "spine impairment, knee impairment, and range of motion of her [sic] spine, knee and hip."  *Id.*  The ALJ stated that the limitation for reaching, however, was inconsistent with Dr. Lorensen's findings that Plaintiff had a full range of motion in his cervical spine and upper extremities.  *Id.* (citing R. 424-25).

Plaintiff argues that the ALJ erred in deciding to reject the moderate reaching limitation found by Dr. Lorensen because Plaintiff's back pain is located in his lumbar (mid-lower) spine, not cervical (upper) spine.  Dkt. No. 13 at 14, 16-17.  In response, the Commissioner contends that the ALJ properly rejected this limitation because it was inconsistent with Dr. Lorensen's own examination and other record evidence.  Dkt. No. 16 at 10-13.

First, the Court finds that the ALJ properly evaluated the supportability or lack thereof of the reaching limitation by citing Dr. Lorensen's own findings that Plaintiff had full range of motion in the upper spine, shoulders, elbows, forearms, and wrists.  R. 21 (citing R. 424-25). Second, while the ALJ did not specifically discuss the consistency of Dr. Lorensen's opinion as to reaching, the ALJ had previously mentioned several exam and x-ray findings at odds with such a limitation.  R. 20.  Plaintiff's lumbar spine range of motion was frequently described as full and normal, despite some inconsistent evidence, R. 341, 386, 589, 603, and x-rays showed only mild or moderate degenerative changes in Plaintiff's lumbar spine, R. 329, 428.  In sum, the Court finds that the ALJ properly evaluated Dr. Lorensen's opinion as to a limitation on reaching and cited substantial evidence supporting that determination in doing so.

**B.    Assessment of Plaintiff's Subjective Symptoms**

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  R. 19.  The ALJ reviewed the medical mental and physical health evidence supporting this conclusion and then noted that Plaintiff "reports to performing many activities of daily living despite his impairments."  R. 20.  The ALJ cited evidence that Plaintiff reported cooking daily, cleaning, washing laundry and shopping weekly, that he could dress and bathe daily, and manage his money.  R. 20.

Plaintiff argues that the ALJ erred in evaluating Plaintiff's subjective descriptions and experiences of his symptoms. Dkt. No. 13 at 14-15. Specifically, Plaintiff claims that the ALJ incorrectly concluded that Plaintiff's daily activities exceeded his reported limitations without substantial evidence. *Id*. Specifically, Plaintiff argues that he is not as capable as portrayed by the ALJ, noting that he microwaves most of his meals and has a caseworker accompany him grocery shopping and assist him with physically handling groceries. Dkt. No. 13 at 15 (citing R. 35, 43). In response, the Commissioner contends that that the ALJ "properly found Plaintiff's statements inconsistent with other evidence." Dkt. No. 16 at 19-22. The Commissioner further contends that "the ALJ evaluated Plaintiff's daily activities not to determine whether he could perform full-time work, but to compare those activities to Plaintiff's allegations of disabling mental symptoms. Dkt. No. 16 at 22 (citing R. 20; C.F.R. § 416.929(c)(3)(i)).

The ALJ is tasked with evaluating the "intensity, persistence, or functionally limiting effects" of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c). When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the claimant's statements considering the details of the case record as a whole, including daily activities. 20 C.F.R. § 404.1529(c)(3)(i). Here, the ALJ cited plethoric medical evidence that contradicted or undermined Plaintiff's reported symptoms, including x-rays, exam findings, and treatment notes. R. 20. Even assuming that the ALJ overstated Plaintiff's ability to cook and shop by himself, the ALJ cited several daily activities that were inconsistent with Plaintiff's asserted limitations, including cleaning once or twice a week, bathing and dressing daily, and doing laundry. *Id*. After careful review of the record, the Court finds that the ALJ did not err in evaluating Plaintiff's subjective symptoms, and in any event, the Commissioner does not rely on Plaintiff's daily living

activities to support its determinations.[7]  *See* R. 19-20 (discussing Plaintiff's various limitations in light of evidence in the record and finding that the evidence does not support that Plaintiff would need to make major adjustments to handle increases in the demands of his daily life).

**C.   RFC Determination**

Plaintiff argues that the RFC determined by the ALJ is not supported by substantial evidence for several reasons: (1) it does not account for his sitting ability; (2) the ALJ erred in concluding that Plaintiff could frequently lift up to ten pounds; (3) the ALJ erred in concluding that Plaintiff could stand and walk for six or more hours per day; (4) the ALJ did not include any limitation for reaching; and (5) the ALJ erred in concluding that Plaintiff could have occasional interaction with others and would be able to maintain a low stress job.  Dkt. No. 13 at 15-17.

First, the Court finds that the physical capabilities portion of the RFC is supported by substantial evidence.  As the Commissioner points out, the ALJ implicitly considered Plaintiff's ability to sit in determining that he could perform light work.  Dkt. No. 16 at 13.  Pursuant to the Regulations, light work definitionally involves the ability to sit.  *See* C.F.R. § 404.1567(c) ("If someone can do light work, we determine that he or she can also do sedentary work.").  As to lifting, the ALJ cited Dr. Lorensen's opinion that Plaintiff had a moderate limitation.  R. 21.  The ALJ also cited evidence that Plaintiff had normal range of motion in his extremities.  R. 20.  As to standing and walking, the ALJ cited Dr. Lorensen's opinion that Plaintiff had no related gross limitations.  R. 21.  The ALJ also cited normal findings from Plaintiff's physical exams.  R. 21. And the Commissioner notes that Plaintiff had a normal gait and reported walking a mile daily without difficulty as of November 2019.  R. 386, 568.  Further, as discussed above, substantial

---

[7] Unlike in the cases cited by Plaintiff on this point, the ALJ did not use this opinion as the basis for discounting treating source opinions.  *See* Dkt. No. 13 at 15 (citing *Sonia V. v. Comm'r of Soc. Sec., No.* 5:18-CV-22 (ATB), 2019 WL 428829, at \*7 (N.D.N.Y. Feb. 4, 2019)).

evidence supported the finding that Plaintiff had a moderate limitation for reaching.

Second, the Court finds that the mental capabilities portion of the RFC is supported by substantial evidence.  As discussed above, the ALJ erred in analyzing the marked limitations assessed by Dr. Thesee, such as for Plaintiff's interactions with others and ability to maintain a regular schedule.  But the RFC is nonetheless consistent with Plaintiff's marked limitations because it restricted him to simple, routine, and repetitive tasks; a low-stress job; and no more than occasional interaction with coworkers, supervisors, and the public.  R. 19; *see Robert L.M. v. Berryhill*, No. 8:18-CV-0208 (GTS), 2018 WL 5313452, at *7 (N.D.N.Y. Oct. 26, 2018) (the "ALJ accounted for the opined marked limitation in decision-making and dealing with stress and moderate limitations in performing work at a consistent pace, by restricting Plaintiff to only simple decision-making and routine daily tasks and duties in a consistent workplace that do not significantly change in pace or location on a daily basis"); *Mejia v. Comm'r of Soc. Sec.*, No. 1:15-CV-1279 (GTS/WBC), 2017 WL 1133350, at *5 (N.D.N.Y. Mar. 1, 2017) (ALJ's mental RFC limiting Plaintiff to "simple work related decisions" was consistent with doctor's opinion that Plaintiff had a marked limitation in her ability to make complex work-related decisions), *adopted*, 2017 WL 1133410 (N.D.N.Y. Mar. 24, 2017).  Thus, the ALJ's error was harmless and did not affect the outcome.  *See Kya M. v. Comm'r of Soc. Sec.*, 506 F. Supp. 3d 159, 167 (W.D.N.Y. 2020) (finding that RFC limiting the plaintiff to occasional interaction with co-workers and supervisors addressed doctor's opinion that he was markedly limited in relating adequately with others) (citing cases); *Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (finding that any error by the ALJ in evaluating doctor's opinion was harmless where the limitations assessed by that doctor were accounted for in the RFC).  Further, the ALJ cited substantial evidence which could be read to support the mental capabilities portion of the RFC,

including Dr. Noia's medical source statement, the opinions from psychiatric consultants Dr. Hoffman and Dr. Ochoa, and Counselor McGregor's opinion.[8]  R. 22.

### D.  Step Four Finding

Plaintiff argues that the ALJ erred at Step Four of the disability analysis in finding that Plaintiff could return to past relevant work as a small parts assembler.  Dkt. No. 13 at 18. Specifically, Plaintiff claims that (1) the ALJ failed to develop the record about his past work as an assembler, (2) failed to address whether the job was an "unsuccessful work attempt," and (3) failed to make findings about the mental demands of the assembler position.  *Id.* at 18-21.  The Commissioner disagrees on each point.  Dkt. No. 16 at 22-24.

In general, "past relevant work" is "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [a claimant] to learn to do it."  20 C.F. R. § 416.960(b)(1).  Notably, at the fourth step of the disability analysis, "the claimant has the burden to show an inability to return to [his] previous specific job *and* an inability to perform [his] past relevant work generally."  *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003).

The record reflects that the ALJ possessed ample information about the requirements of the assembler position and how Plaintiff performed it.  R. 52-56, 262.  Based on this information and Plaintiff's testimony, the ALJ concluded that Plaintiff was gainfully employed as an assembler within the preceding fifteen years (in 2005 and 2006) for a period of nine months.

---

[8] While it appears that the examining physicians' evidence is less consistent than the consultative opinions, they are not wholly inconsistent, and "[a]lthough an examining source is 'generally' afforded more weight than a non-examining source, an ALJ is allowed to afford a non-examining source more weight than an examining one."  *Christy v. Comm'r of Soc. Sec.*, No. 5:13-CV-1552(GTS/WBC), 2015 WL 6160165, at *9 (N.D.N.Y. Oct. 20, 2015).

R. 23.  To the extent Plaintiff claims that he worked only a "few months,"[9] that was invariably

longer than the 30-day training period required to learn such an unskilled position.  *See* R. 22-23

(citing DOT 706.684-022), 55-56.  The ALJ credited Plaintiff's argument that he "was moved

due to performing too many mistakes with the assembly technology" as only an "indicat[ion] that

the claimant was unable to perform at the level that the company desired, [but] it does not prove

that the claimant was unable to work at the average level."  R. 23.

Further, Plaintiff's assembler position did not amount to an "unsuccessful work attempt"

such that it did not count as past relevant work.  As relevant here, an unsuccessful work attempt

is where the claimant worked 6 months or less and stopped working because of an impairment or

"because of the removal of special conditions that were essential to the further performance of

your work."  *See* 20 C.F.R. § 416.974(c).  An unsuccessful work attempt must also be preceded

by a "significant break in the continuity" of the claimant's work.  *Id.* at § 416.974(c)(2).  As the

Commissioner points out, the record shows that Plaintiff was working before he took the

assembler position,[10] and Plaintiff has not adduced any evidence that he stopped working as an

assembler due to an impairment. Dkt. No. 16 at 25-26 (noting that a "claimant must also have

been out of work for at least thirty days before the 'unsuccessful work attempt,' and the job

constituting the 'unsuccessful work attempt' must have ended 'because of [the claimant's]

---

[9] The Commission could certainly have established the record more effectively on this disputed issue.  *See* R. 55-56.  Development of the record is the duty of the ALJ.  *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("Even when a claimant is represented by counsel it is the well-established rule in our circuit 'that the social security ALJ … must on behalf of all claimants … affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'") (alterations provided) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)).  Nevertheless, the Court finds that the record is sufficient to resolve this issue.

[10] The Commissioner argues that "Plaintiff reported the SSA that he worked continuously from 1999 to 2013," however the record does not establish what length of time, if any, existed between Plaintiffs preceding job as a hotel events manager that ended in 2005 and the assembler job that Plaintiff began in mid-2005.  *See* R. 259.

impairment'"). Notably, the record does not establish that the role Plaintiff transitioned to at the assembler job would not meet the definition of light work, nor that Plaintiff lost that job due to performance issues. *See* R. 23, 55-56. Indeed, the record establishes that the job title did not change when Plaintiff's job function at the employer changed, and Plaintiff's testimony, while equivocal on timing, is clear that the employment at each function met the time required by the Regulations to learn each unskilled role. *See* R. 22-23 (citing DOT Code: 706.684-022, svp 2); *cf.* R. 285 (post-hearing brief arguing that Plaintiff was unable to learn the job sufficiently for it to be considered past relevant work). In sum, the Court finds that ALJ did not err in finding that Plaintiff had past relevant work as an assembler.

Finally, the Court concludes that the ALJ relied on substantial evidence in finding that Plaintiff could perform his past relevant work. Although Plaintiff argues that the ALJ failed to make findings about the mental demands of the assembler position, the ALJ relied on testimony from a vocational expert that Plaintiff would be able to perform his work as an assembler considering the assessed RFC.[11] R. 22. The hearing transcript shows that the ALJ asked the vocational expert if an individual could perform the assembler position with limitations to simple, routine, and repetitive tasks, low-stress, and no more than occasional interaction with coworkers, supervisors, and the public. R. 53. The vocational expert answered affirmatively that Plaintiff could complete the past relevant work as a small parts assembler, both as described in the regulations and as actually performed. R. 53-55. The Court finds that the Commissioner has supported the conclusion that Plaintiff is sufficiently capable with substantial evidence.

---

[11] The RFC additional limitations the ALJ imposed that account for the mental demands of employment include that Plaintiff (1) "should work at simple, routine and repetitive tasks[;]" (2) "should work in a low stress job defined as occasional decision-making, occasional judgment required on the job and occasional changes in the work setting[;]" and (3) "should have no more than occasional interaction with coworkers, supervisors and the public." R. 19.

## V.   CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules and close the case.

**IT IS SO ORDERED.**

Dated:  March 31, 2023
       Albany, New York

Anne M. Nardacci
U.S. District Judge